UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

BILLY J. HALLMAN,

                        Plaintiff,

v.                                                    CASE # 19-cv-00683

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
———————————————————————————

APPEARANCES:                            OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      IDA M. COMERFORD, ESQ.
  Counsel for Plaintiff                           KENNETH R. HILLER, ESQ.
600 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.             PRASHANT TAMASKAR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   ELLEN SOVERN, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on August 1, 1979, and completed high school. (Tr. 141, 166). Generally, plaintiff's alleged disability consists of traumatic brain injury with memory loss, collar bone injury, and problems with his feet. (Tr. 165). His alleged onset date of disability is April 19, 2015. (Tr. 179).

### B.    Procedural History

On November 4, 2015, plaintiff protectively applied for a period of Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 141-146). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On March 8, 2018, plaintiff appeared before the ALJ, Lisa B. Martin. (Tr. 28-55). On July 27, 2018, ALJ Martin issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-23). On March 29, 2019, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since November 4, 2015, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: history of clavicle fracture with residual left shoulder dysfunction, lumbar spine disorder, history of left lower extremity fracture with residual left leg dysfunction, traumatic brain injury with headaches, vision disorder, anxiety disorder, attention deficit disorder, and substance abuse disorder. (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of medium work as defined in 20 CFR 416.967(c), except as follows. The claimant is limited to occasional ladder, rope, or scaffold climbing, no overhead reaching with the left upper extremity, and frequent, but not constant, forward reaching with his left upper extremity, and frequent, but not constant, forward reaching with his left upper extremity. The claimant is limited to no exposure to dangerous work hazards, including unprotected heights and exposed moving machinery. He is limited to routine, simple tasks that do not require a fast, assembly quota pace, do not involve more than occasional required work interactions with co-workers, supervisors, and the public, and allow for up to 3 percent off-task behavior during the workday due to symptom exacerbations. The claimant is limited to work that does not require a full field of vision. He is limited to a work setting that involves GED reasoning levels of 2 or less and involving little or no change in instructions or duties.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 1, 1979, and was 36 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 4, 2015, the date the application was filed (20 CFR 416.920(g)).

(Tr. 7-23).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes three arguments in support of his motion for judgment on the pleadings.

First, plaintiff argues the ALJ formulated her own very specific RFC finding regarding plaintiff's

concentration deficits with no basis in the medical evidence and therefore, her finding is not based on substantial evidence. (Dkt. No. 7 at 15 [Pl.'s Mem. of Law]). Second, the ALJ failed in her duty to resolve an apparent conflict between the Dictionary of Occupational Titles and the vocational expert's testimony. (Dkt. No. 7 at 21). Third, the ALJ identified the wrong visual impairment and then relied on this in her RFC determination which is therefore not based on substantial evidence. (Dkt. No. 7 at 23).

### B. Defendant's Arguments

In response, defendant directly rebuts plaintiff's three arguments. (Dkt. No. 11 at 6, 9, 12 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Off-Task Limitations

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what plaintiff can still do, provided by any medical sources.  *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Plaintiff argues the ALJ's finding that plaintiff was limited to 3% off-task behavior during the workday is unsupported by medical evidence. However, the ALJ's decision shows she considered the evidence of record and it was supported by medical evidence.

The Western District has stated that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"" *Hogan v. Astrue*, 491 F.Supp. 2d. 347, 354 (W.D.N.Y. 2007) citing Social Security Ruling 96–8p, 1996 WL 374184, at *7 (S.SA.); *see also Balsamo v. Chater*, 142 F.3d 75, 80–81 (2d Cir.1998). As noted by plaintiff in his brief, evidence of difficulties in concentrating are only "sprinkled throughout the record." (Dkt. No. 7 at 16). The record reveals concentration complaints at examinations in September 2015, January 2016, and December 2016. (Tr. 251, 384, 446). Only two of these complaints were to treating providers. Despite the scant evidence, plaintiff argues it is shocking that the ALJ would find up to 3% off-task behavior during the workday. (Tr. 16). However, the ALJ discussed the two medical opinions in the record that supported her finding and other evidence that constitute substantial evidence.

The State Agency psychological consultant opined that plaintiff had no mental limitations. (Tr. 60). Consultative examiner Christine Ransom, Ph.D., opined plaintiff had mild difficulty in maintaining attention and concentration for simple tasks. (Tr. 260). ALJ Martin gave little weight to the State Agency psychological consultant's opinion because she found it inconsistent with plaintiff's subjective complaints. However, the ALJ afforded some weight to Dr. Ransom's opinion while noting that plaintiff appeared to be more limited in concentration than found by Dr. Ransom. (Tr. 21).

The ALJ credited plaintiff's subjective complaints to an extent but remarked that objective medical evidence of record did not show more severe limitations. (Tr. 21-22). As stated above, the ALJ discussed this objective medical evidence of record in her decision. The ALJ referenced Dr. Ransom's examination results, including intact attention and concertation. (Tr. 20 citing Tr. 251). The ALJ discussed a December 19, 2016 initial psychiatric evaluation by Dr. Capote which showed diminished concentration leading to a diagnosis of attention deficit disorder and a prescription for Strattera. (Tr. 19 citing Tr. 448-449).

Plaintiff is unable to cite records or any opinion suggesting a more restrictive RFC, but rather cites the same evidence as the ALJ in an effort to have the evidence re-weighed. Plaintiff cannot meet his burden of proving a more restrictive RFC by highlighting evidence the ALJ considered and arguing that it should have been weighed or considered differently. Plaintiff also relies heavily on his statement to Gary Wysocki, RPA-C (Registered Physician Assistant – Certified), that he had difficulty concentrating nearly every day, however there is no evidence corroborating that one subjective report. (Tr. 384). It is well established that an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in

7

the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)(quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

Contrary to plaintiff's argument, a medical opinion is not required to make a specific RFC finding. An ALJ makes the RFC determination based on the record as a whole, and the ALJ's determination is not required to perfectly correspond with any of the medical source opinions cited in the decision. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Here, the ALJ's decision outlines clearly to the reader why she included an off-task allowance for plaintiff.  In concluding plaintiff would be off-task a percentage of the day, the ALJ relied on the record as a whole, including plaintiff's subjective complaints and the medical opinion evidence. The ALJ stated she considered the following when determining the mental limitations of the RFC:

> The plaintiff's symptoms secondary to anxiety, ADD, and substance abuse as well as effects of his traumatic brain injury, in addition to the longitudinal treatment history, predominately for substance abuse. (Tr. 20).

"The fact that the ALJ assigned a particular percentage range [. . .] to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence." *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016). It is reasonable that the ALJ would afford plaintiff an off-task allowance to account for his subjective complaints. Therefore, substantial evidence supported the ALJ RFC determination that plaintiff would be off-task 3% of the workday.

If, as plaintiff urges, the ALJ was required to base each functional limitation of her RFC on a medical source opinion, the RFC here would be less restrictive because both medical sources in the record opined plaintiff had no greater than mild difficulties in attention and the RFC additionally already included a limitation to routine, simple tasks and work restricted to a GED reasoning level of 2 or less and little or no change in instructions or duties. (Tr. 16). *See Bartell v.*

*Comm'r of Soc. Sec.,* 5:13–CV–843, 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (holding the ALJ adequately factored in limitations in maintaining concentration, persistence and pace and difficulties dealing with stress by limiting plaintiff to simple unskilled work).

### B. Conflict Between the Dictionary of Occupational Titles and the Vocational Expert's Testimony

Plaintiff next argues the ALJ did not reconcile a possible conflict between the Dictionary of Occupational Titles (DOT) and the vocational expert's testimony. (Dkt. No. 7 at 21-23). As identified in briefs from both parties, *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), is the governing precedent on this issue. In *Lockwood*, the Second Circuit noted that because SSR 85-15 defines reaching as "extending the hands and arms in any direction," a potential inconsistency existed between the DOT and a vocational expert's testimony that a plaintiff could perform jobs requiring frequent reaching despite not being able to reach overhead. *Id.* at 91-92. The court further discussed that SSR 00-4p requires the Commissioner to "elicit a reasonable explanation" for a conflict between the DOT and a vocational expert's testimony before relying on the vocational expert's testimony. *Id*. However, the Court held that an ALJ cannot satisfy this obligation merely by asking the vocational expert if there is any inconsistency between the testimony and the DOT. *Id*. at 92-93.

In this case, the RFC included a limitation of no overhead reaching but frequent forward reaching with the left upper extremity. The vocational expert testified an individual would be able to work as a warehouse worker or industrial cleaner. (Tr. 51-53). However, according to the DOT, these positions require frequent reaching. 1991 WL 688132 (warehouse worker, DOT code 922.687-058); 1991 WL 673258 (industrial cleaner, DOT code 381.687-018).

A plain reading of the hearing transcript shows the ALJ elicited testimony that reconciled any conflicts between the DOT and the vocational expert's testimony. The ALJ specifically asked the vocational expert if his testimony was consistent with the DOT and the VE replied:

> "It is, your honor, although the DOT doesn't address some issues such as being off task. For that testimony – it also does not address reaching, handling, fingering, and fingering in terms of direction; only in frequency. So for that testimony and any other testimony that is not specifically addressed in the DOT or the SCO[1], I always rely on my experience in disability management." (Tr. 53).

Plaintiff's reply brief states the ALJ needed to do more than ask if there was a conflict but the vocational expert's answer was more than a yes or no response and included additional information about the conflict and how it was resolved. It is unclear what else plaintiff could expect the ALJ to ask or do as a follow-up. The plaintiff's counsel also did not elicit any testimony about a possible conflict or challenge the expert's explanation regarding the conflict. (Tr. 53-54). Therefore, plaintiff's argument that the ALJ failed to elicit testimony from the vocational expert explaining the conflict is unsuccessful.

### C.  Visual Impairment

Finally, plaintiff contends the ALJ not only incorrectly categorized his visual impairment but also failed to affirmatively develop the record by neglecting to obtain a medical opinion about visual limitations. (Dkt. No. 7 at 23, 26). Specifically, the ALJ found plaintiff's visual limitations affected his field of vision but plaintiff asserts there should have been visual acuity limitations in the RFC. To be sure, it is ultimately plaintiff's burden to prove a more restrictive RFC. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). (The claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps).

---

[1] Selected Characteristics of Occupations (SCO)

As cited by both plaintiff and defendant, there are primarily two medical records that pertain to plaintiff's vision, and both were addressed in the ALJ's decision. (Tr. 18-19). The first is a January 2016 consultative examination with Dr. Miller. (Tr. 253). Dr. Miller measured plaintiff's uncorrected visual acuity as 20/50 in his right eye, 20/100 in his left eye, and 20/50 in both eyes. (Tr. 254). In her medical source statement, Dr. Miller opined mild limitations for overhead reaching, pushing, pulling, kneeling, and squatting, but did not list a limitation related to vision. (Tr. 256). The second record is an August 23, 2017, examination by Ozgur Ozkan, M.D. (Tr. 416). Plaintiff told Dr. Ozkan that his "vision seems to be fine" and uncorrected visual acuity was measured to be 20/40 in the right eye and 20/30 in the left eye. (Tr. 417). The ALJ acknowledged plaintiff's testimony that he had vision issue with his left eye. Specifically, plaintiff stated in "every direction I can barely see out of this left eye" and objects were "very, very blurry" when viewed through his left eye. (Tr. 45, 49).

The ALJ is obligated to devise an RFC finding based on substantial evidence. *See Benman v. Commissioner of Social Security,* 350 F.Supp.3d 252, 256-257 (W.D.N.Y. November 21, 2018). In fulfilling this duty, "an ALJ is tasked with 'weighing all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Id.* at 257 citing *Matta v. Astrue,* 508 F.App'x 53, 56 (2nd Cir. 2013). Plaintiff however seeks to have the ALJ re-weigh the evidence. Plaintiff references his testimony about the inability to see out of one eye and argues "it is clear" he was referring not to his ability to actually observe objects but that objects were blurry. (Tr. 49).

Further, the argument that the ALJ left out the myopic astigmatisim diagnosis and only mentioned the ocular migraine diagnosis is not an error requiring remand. The ALJ properly found plaintiff had a severe vision impairment at Step Two of the sequential evaluation. It is well-settled that the ALJ need not mention, in the written decision, every shred of evidence, assessment, or

diagnosis found in the record, and an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin.,* 683 F.3d 443, 448 (2d Cir. 2012). The ALJ relied on the visual examinations, statements by plaintiff to examiners, and daily activities when determining the visual limitations.

Contrary to plaintiff's argument, additional records were not necessary. Plaintiff attempts to argue the ALJ limited questioning on the visual impairments, however counsel was permitted to ask questions related to plaintiff's vision. (Tr. 45, 49). Plaintiff's assertion that a medical opinion was needed is also unavailing because "[t]he ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (ALJ was not required to re-contact treating source for a medical source statement because record contained complete medical history). However, the record contained a complete visual examination, along with a visual examination conducted by a consultative examiner. The consultative examiner also failed to provide any visual limitations despite noting other functional limitations. The ALJ need not obtain another medical opinion when the record is fully developed on an issue, as it was here. Notably, plaintiff's counsel had the opportunity to ask questions of the vocational expert and did not raise any issues pertaining to visual acuity. (Tr. 53-54).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No.7) is

**<u>DENIED</u>;** and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

**<u>GRANTED</u>**.

Dated: June 12, 2020                              *<u>J. Gregory Wehrman</u>*
Rochester, New York                               HON. J. Gregory Wehrman
                                                  United States Magistrate Judge